## JOSEPH et al. v. LUMBERMEN'S MUT. CAS. CO.

### Civ. No. 3172.

United States District Court
W. D. Louisiana, Shreveport Division.

May 14, 1951.

Godfrey & Edwards, Many, La., Booth, Lockard & Jack and Whitfield Jack, all of Shreveport, La., for plaintiffs.

Browne, Browne & Bodenheimer and G. M. Bodenheimer, all of Shreveport, La., for defendant.

DAWKINS, Chief Judge.

Plaintiffs sued defendant alone under LSA–RS 22:655, for damages alleged to have been caused in a collision between an automobile in which they were riding and a truck owned by Sabine Lumber Company, upon which the Lumbermen's Mutual carried a policy of liability insurance.

Defendant, without answering, has moved for a summary, judgment on the ground "there is no genuine issue as to any material fact involved in this case."

In the complaint plaintiffs allege that the driver of the truck, A. R. Maxie, was employed by, and used, operated and maintained the same as an employee of, the assured, acting "in the course and scope of his employment, and with the knowledge and consent of assured and its agents." The complaint was not verified.

In its motion for summary judgment, defendant avers as follows:

"7.

"Now shows that he attaches hereto affidavits of Dewey Craig and Joe Ferguson, which show conclusively the following facts: 'That the pick up truck at the time of said collision was being operated by one A. R. Maxie who was operating the said truck without the knowledge, or permission, either express or implied, of the named assured and said Maxie was not operating the said pick up truck within the course and scope of his employment.'

"8.

"Shows that as a matter of law, therefore, that any damages as a result of the

alleged negligent operation of said truck could not be legally claimed or recovered from said defendant, Lumbermen's Mutual Casualty Company."

In his affidavit attached to the motion for summary judgment, Ferguson says that he is the manager and one of the stock-holders of the insured, which is engaged in the saw-mill business; that the truck at the time of the accident "had been placed * * in the possession of Dewey Craig, one of the woods foremen of the Sabine Lumber Co., with instructions that the truck was to be used by him only on company business and was not to be loaned to anyone else except *in an emergency*" (italics by the writer); that Maxie was employed solely as a "mule skinner" and "was not working, nor had he been working on Saturday, November 11th" (the day before the collision on the early morning of the 12th) and that therefore he was "not within the course and scope of his employment at the time the accident * * * occurred."

Craig's affidavit asserts that he was "employed by" insured as "woods foreman" and was entrusted with the use of the truck for company business. He then states the facts, from his viewpoint, as follows:

## "2.

"That on the evening of November 11, 1950, I loaned the said Chevrolet truck to one A. R. Maxie in order for him to drive home. No emergency existed and the only reason I loaned said Maxie the truck was that it was late at night and I didn't want to drive to Many, Louisiana, myself that late at night. Maxie was not at that time doing any work for the Sabine Lumber Company and was simply going home for the night and had not been working for the Sabine Lumber Company during the day of November 11th.

## "3.

"I did not have authority to loan the truck to Maxie or anyone else, except in an emergency. I had received definite instructions from Mr. Joe Ferguson, the manager of the Sabine Lumber Company, not to loan the truck to anyone or to even allow anyone to drive it, except in an emergency."

Prior to the motion for summary judgment, plaintiff had propounded certain interrogatories to Ferguson, the manager of the insured, as to the status of both Maxie and Craig with the lumber company; and the answers were to the effect in substance that Maxie had worked through November 10 preceding the accident, which occurred shortly after midnight, November 12, 1950, but did not reurn to work again until January 5, 1951; and that his "duties were that of a mule skinner, which does not include the driving of motor vehicles." Further, that Craig had been employed by the lumber company for fourteen years and was woods foreman at the time of the accident; that "as of 11–12 November, 1950," Dewey Craig was "the immediate superior of Will Scott and A. R. Maxie"; and finally Ferguson was asked and answered Interrogatory #6 as follows:

"Q. As of the time of the accident involving the Chevrolet pick up truck belonging to Sabine Lumber Company and the Chevrolet Coupe belonging to complainant Joseph, as set out in the petition, was it not a fact that the said A. R. Maxie was operating the pick up truck on the orders of Dewey Craig who was in turn authorized to give such orders to A. R. Maxie by the defendant, Sabine Lumber Company? A. I was not present at any time when A. R. Maxie was ordered by Dewey Craig to operate the pick up truck, or any other vehicle of the Sabine Lumber Company, nor was Dewey Craig authorized to allow anyone else besides himself to drive or use the pick up truck involved in the accident."

Plaintiffs filed no affidavits at all, but did file what is termed an "Answer to Defendant's Motion for Summary Judgment." In this document, it is charged that the motion for summary judgment is "without merit and filed only for the purpose of securing delay"; that the truck was, as charged in the complaint, being operated "by a person with the knowledge and consent of the assured * * *; and * * * within the course and scope of his employment * * *"; and that the motion for

summary judgment "does nothing more than deny the allegations of the complaint * * *." Plaintiff next makes certain allegations as to delays in which defendant could file his pleadings that were not complied with; and concludes with the assertion that the motion for summary judgment "on its face is worthless." This "Answer" is also not verified. It would seem that if a case can properly be disposed of on such a motion and thus avoid an extended trial, it would be the court's duty to consider it at any time.

 No copy of the policy of insurance has been furnished to the court, and it has before it only the allegations of the pleadings and motions and affidavits, which have caused some confusion that might have been cleared up by the policy. It is this court's conception that the provisions of Rule 56, Fed.Rules Civ.Proc. 28 U.S.C. A., providing the procedure for summary judgment, have a serious purpose, that is, to end litigation without the necessity of a trial, in favor of one side or the other, where there is no genuine issue of fact. Neither party, therefore, can, when such a motion is made, rely exclusively upon the allegations of his complaint or answer, but must produce at least enough evidence to show that there is a real issue of fact. Otherwise, either party could allege facts or conclusions, which, on their face, might state a good cause of action or defense, but when called upon for proof would be unable to furnish any substantial evidence to support them. It was to prevent this kind of tactics that the rule was adopted.

 There are two situations which seem to make it impossible or at least improper for this court to act affirmatively on this motion, i. e., it is called upon to construe the provisions of a policy which it has not seen, and there is nothing before it by which the phrase "except in an emergency" can be interpreted or evaluated. See pertinent authorities in Barron & Holtzhoff, Federal Practice and Procedure, Volume 3, Rules Edition, dealing with Rule 56.

For the reasons stated, the motion for summary judgment is denied at this time.